Kenneth SEXTON, et al., Plaintiffs,

v.

The PRINCIPAL FINANCIAL GROUP, et al., Defendants.

Civil Action No. 95–D–910–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 21, 1996.

170

Kenneth Sexton, Montgomery, AL, pro se.

Lynn E. Hare, Thomas A. Woodall, Birmingham, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is plaintiffs' motion to remand filed August 4, 1995. Defendant Principal Mutual Life Insurance Company ("Principal") filed a response in opposition to plaintiffs' motion on August 21, 1995. Defendants Principal, Scott Williams ("Mr. Williams"), and Merle Kaplan ("Mr. Kaplan") filed a supplemental brief in opposition to plaintiffs' motion on December 22, 1995. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that the above-styled action is due to be remanded.

### STATEMENT OF FACTS

The plaintiffs filed the above-styled action in the Circuit Court of Montgomery County, Alabama, on May 26, 1995, asserting claims under state common and statutory law for bad faith, fraud and misrepresentation, outrage, civil conspiracy, negligence, negligent entrustment, breach of fiduciary duty and breach of contract. These claims all arise out of a health insurance policy provided by defendant Principal.

Specifically, plaintiff Kenneth Sexton maintained a pooled group policy or contract with defendant Principal through his business, plaintiffs Sexton and Sexton, Inc., and Sexton and Sexton, a sole proprietorship (together "Sexton and Sexton"). This insurance contract allowed Sexton and Sexton to add other groups, defined as participating units, to the contract. Based upon alleged misrepresentations by Principal's agents, the plaintiffs believed that a member of a participating unit could be an employee of a participating unit without being an employee of Sexton and Sexton. Later, Principal told the plaintiffs that such groups did not qualify for the pooled group policy and would have to be amended into the insurance contract. They also contend that Principal's agents fraudulently induced plaintiff into participating in an illegal funding program whereby insurance premiums were used as part of the business's cash flow until the premiums were actually needed.

Principal filed a notice of removal on July 6, 1995, on the grounds that the health insurance policy made the basis of the plaintiffs' action is an employee welfare benefit plan governed by the provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Furthermore, Principal contends that the court has diversity jurisdiction under 28 U.S.C. § 1332.

On November 9, 1995, the plaintiffs amended their complaint to add several individuals whom the plaintiffs allege were agents and employees of Principal. These individuals included Mr. Williams and Margaret Sexton ("Ms. Sexton"), both citizens of the state of Alabama. The court will first address the question of whether the court has diversity jurisdiction.

### A. Diversity Jurisdiction

A district court has original jurisdiction over all cases where citizens of different

states are involved and the amount in controversy exceeds $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). When federal subject matter jurisdiction is predicated on diversity of citizenship, complete diversity must exist between the opposing parties. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978).

The defendants contend that the court should determine whether diversity jurisdiction exists based on the plaintiffs' original complaint, which only names Principal as a defendant, rather than on the amended complaint which adds non-diverse individual defendants. In support of their argument, the defendants argue that the individual defendants were added solely to defeat diversity jurisdiction. *See Johnson v. First Federal Savings and Loan Assn.*, 418 F.Supp. 1106 (E.D.Mich.1976). The court likens this argument to that of fraudulent joinder. Thus, the court will apply a fraudulent joinder analysis to determine whether the court has diversity jurisdiction over this action.

■ The doctrine of fraudulent joinder is applicable when the plaintiff, a citizen of the forum state, joins a resident citizen defendant with a nonresident citizen defendant. The joinder is fraudulent if the plaintiff fails to state a cause of action against the resident defendant and the failure is obvious according to the settled rules of the state. *See Parks v. New York Times*, 308 F.2d 474, 477 (5th Cir.1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). In *Parks*, the court held that

> [t]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard. One or the other at least would be required before it could be said that there was no real intention to get a joint

judgment and that there was no colorable ground for so claiming.

*Id.* at 478.

■ When determining whether a defendant was fraudulently joined, the court must evaluate all factual issues and substantive law in favor of the plaintiff. *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir.1983). If there is a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court. *Coker*, 709 F.2d at 1440 (citing *Parks*, 308 F.2d at 477–78). "The removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989) (citing *Coker*, 709 F.2d at 1440). The determination of whether a non-diverse defendant has been fraudulently joined to destroy diversity should be based on the plaintiff's pleadings at the time of removal. *Autrey v. United Cos. Lending Corp.*, 872 F.Supp. 925, 929 (M.D.Ala.1995) (DeMent, J.).

■ While the citizenship of ficticious defendants should not be considered for purposes of determining diversity,[1] the court notes that United States Magistrate Judge Charles S. Coody allowed the plaintiffs to amend their complaint on November 27, 1995, to add several individual defendants including Ms. Sexton and Mr. Williams. Despite the joinder of these additional defendants, the defendants maintain that their joinder does not defeat a removal based on the defendants named in the initial complaint. However, pursuant to 28 U.S.C. § 1447(e), the court emphasizes that if the joinder of additional defendants destroys diversity jurisdiction, the court may remand the action to state court.[2] Thus, the court must determine whether the complaint states a valid claim against Ms. Sexton and Mr.

---

1. Section 1441(a) of Title 28 of the United States Code provides in part that "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

2. Section 1447(e) of Title 28 of the United States Code provides: If after removal the plaintiff seeks to join an additional defendant whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to state court.

Williams, each being a citizen of the state of Alabama.

A review of plaintiff's original complaint reveals that the plaintiff intended to bring a claim against both Ms. Sexton and Mr. Williams, though they were not yet identified by name, on several bases. Specifically, the plaintiffs contend in Count I that Principal and the individual fictitious defendants allegedly misrepresented material facts to the plaintiffs in violation of Section 6–5–101 of the *Alabama Code.* Pl.'s Compl. at 5 (emphasis added). Although sued in their capacity as agents, the Supreme Court of Alabama has noted that

> [i]t is thoroughly well settled that a man is personally liable for all torts committed by him, constituting in misfeasance—as fraud, conversion, acts done negligently, etc.— notwithstanding he may have acted as the agent or under the direction of another.

*Crigler v. Salac,* 438 So.2d 1375, 1380 (Ala. 1983); *Ex Parte Charles Bell Pontiac– Buick–Cadillac–GMC, Inc.,* 496 So.2d 774, 775 (Ala.1986). Based on the holding of the Supreme Court of Alabama in *Crigler,* it is clear that Mr. Williams and Ms. Sexton can be sued in their individual capacities for fraudulent misrepresentation. Furthermore, the court finds that there is a possibility that a state court could find that the plaintiffs' complaint states a cause of action against Mr. Williams and Ms. Sexton. Because a single valid claim against a resident defendant is enough to defeat diversity jurisdiction, the court finds it unnecessary to analyze any other claims raised by the plaintiffs in their original complaint. Based on the foregoing, the court finds unpersuasive the defendants' opposition to plaintiffs' motion to remand under a fraudulent joinder theory.

## B. *Federal Question Jurisdiction*

■ The defendants also argue that, if the court rejects fraudulent joinder as a basis to exercise diversity jurisdiction, the court still has federal question jurisdiction over this action. While the defendants recognize that the complaint clearly asserts state law claims, they contend that the state law claims are pre-empted by ERISA because the allegations "relate to" fraudulent plan adminis-

tration and/or the non-payment of benefits. The plaintiffs, on the other hand, argue that ERISA does not pre-empt their state law claims because their claims involve fraudulent inducement into a contract rather than claims for benefits under an employee welfare benefit plan. *See HealthAmerica v. Menton* 551 So.2d 235 (Ala.1989) (Claim for fraudulent inducement does not "relate to" an employee benefit plan and is therefore not pre-empted by ERISA); *see also Harbor Insurance Co. v. Blackwelder,* 554 So.2d 329 (Ala.1989) (Claim for fraudulent inducement does not relate to an employee benefit plan and is therefore not pre-empted by ERISA).

■ Because removal jurisdiction raises significant federalism concerns, the removal statutes must be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). All doubts must be resolved in favor of a remand to state court. *Stone v. Williams,* 792 F.Supp. 749 (M.D.Ala.1992). Furthermore, the plaintiff is "master to decide what law he [or she] will rely upon." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) (brackets supplied). Thus, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Burke v. Humana Ins. Co.,* No. 95– T–299–N, No. 95–T–300–N, slip op. at 4 (M.D.Ala. May 11, 1995) (A plaintiff "has the prerogative to rely on state law alone although both state and federal law may give him [or her] a cause of action.") (brackets supplied). Moreover, "the plaintiff may by the allegations of his [or her] complaint determine the status with respect to the removability of a case." *Great Northern R. Co. v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 239–40, 62 L.Ed. 713 (1918) (brackets supplied).

■ Whether a complaint presents a federal question must be determined from the face of the plaintiff's complaint. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9–11, 103 S.Ct. 2841, 2846– 47, 77 L.Ed.2d 420 (1983). The Supreme Court enunciated the modern test in *Franchise Tax Board,* namely that "lower federal

courts [have] jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 27–28, 103 S.Ct. at 2856. The Supreme Court has narrowly construed the test to restrict removal. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (holding that simply because a claim implicates a federal issue, or involves construction of federal law, does not necessarily give rise to a federal question and confer removal jurisdiction on a federal court).

The defendants correctly note that the United States Supreme Court has stated that the phrase "relate to" as found in 29 U.S.C. § 1144, is to be given a "broad common-sense meaning." *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). Furthermore, the defendants point to the Eleventh Circuit statement that "a state law cause of action 'relates to' an employee benefit plan if the employer's conduct giving rise to such claim was not 'wholly remote in content' from the benefit plan." *Farlow v. Union Cent. Life Ins. Co.,* 874 F.2d 791, 794 (11th Cir.1989).

However, neither *Pilot Life* nor *Farlow* are dispositive of the question presently before the court. In *Pilot Life,* an employee brought a claim against an insurance company that issued his employer's group health insurance policy. 481 U.S. at 43, 107 S.Ct. at 1550–51. The employee had been paid benefits for two years for a permanent disability, but the insurance company terminated his benefits from time to time after the first two years. *Id.* Thus, the employee brought a breach of contract and several tort claims against the company for the company's failure to pay benefits under the policy. *Id.* Similarly in *Farlow,* an employee sued an insurance company because the insurance company did not provide benefits for maternity and pregnancy. 874 F.2d at 794. Importantly, the *Farlow* court noted that "[a] claim does not relate to a plan even though the employer's conduct occurred contempora-

neously with an alleged ERISA violation, unless the facts related to the employee's failure to receive benefits are relevant to the state law claim." *Id.*

In the present action, the plaintiffs are a business and its owner who wished to provide other persons, though not necessarily employees of the plaintiffs, the opportunity to purchase insurance from the plaintiffs based on its contract with Principal. Under the contract, Principal was responsible for setting up and administering the plaintiffs' insurance policy as well as recommending the appropriate premiums · to charge for the plaintiffs' insurance policy.

Clearly, these facts do not translate into an action for benefits by an employee pursuant to an insurance plan, whereas both *Farlow* and *Pilot Life* involved actions by employees regarding benefits under a health insurance plan. Instead, this case involves an employer who was allegedly duped into purchasing a contract which only covered his employees, notwithstanding his belief, based on alleged misrepresentations by Principal's agents, that the contract would cover non-employees as well. Furthermore, it involves an employer who relied on alleged misrepresentations by Principal's agents to use the insurance premiums he collected through his business as part of the business's cash flow. The court finds that, under these facts, the defendants have failed to meet their burden of proving that "the facts related to the [plaintiff's] failure to receive benefits are relevant to the state law claim[s]" as required by *Farlow.* 874 F.2d at 794. Thus, the court finds that there is some doubt whether ERISA pre-empts the plaintiffs' state law claims and that this action is due to be remanded. *See, Stone,* 792 F.Supp. 749.

## CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that plaintiffs' motion to remand be and the same is hereby GRANTED and that the above-styled cause be and the same is hereby REMANDED to the Circuit Court of Montgomery County, Alabama.

The clerk is DIRECTED to take the appropriate steps to effectuate said remand.